## Porter v. Board of Plumbing Supervision of the Department of Health

*Ralph N. Kellam,* for plaintiff.
*Samuel Feldman,* for defendant.

SLOANE, J., January 10, 1942. — The Board of Plumbing Supervision of Philadelphia's Department of Health revoked Porter's master-plumber license. He appeals to us from that action of revocation.

Porter contracted to install the plumbing and house drainage systems in three groups of new row dwellings

in the 3400 and 3500 blocks Meridian Street, in this city. The work in the 3500 block was begun first, and though plans and specifications filed by Porter provided for two air-vent pipes (required by the rules and regulations of the board for that type of construction), only one vent pipe was installed in the 17 inside houses. The work in the dwellings in the 3400 block was begun in the spring of 1941, and was to conform to a blueprint filed by Porter with the department of health. As produced on this appeal, the blueprint called for two air vents, and while Porter testified that, when filed by him, it showed only one vent was to be installed, we do not believe him because he did know that two vents were required and the blueprint did show construction which under the board's rules required two vents. Plans and specifications of the plumbing and drainage (called "plan jackets") were also filed, but these indicated only one air vent in the 34 inside houses, and the plumbing work actually done did not include a second air vent in the rear of the buildings. Porter's work was examined and approved at stages by the department of health's inspector, and construction of the buildings was permitted to progress, enclosing the plumbing and drainage systems.

The board learned of this omission of the rear vents prior to final approval, and summoned Porter and his partner to a hearing. The board first suspended Porter's license and directed him to correct the plumbing systems, and fairly enough, to spare him the expense of tearing out building partitions, gave him permission to cure the defect by merely installing a "Y" pipe or fixture in each cellar, to lead the cellar laundry tray drain pipe into the central air vent. This was done in one of the groups of houses, but the other two, consisting of 34 dwellings, remain uncorrected. Porter at subsequent hearings gave as excuse an inability to gain access to the remaining 34 houses, the new occupants denying him admittance to make the required changes.

This excuse was rejected by the board, and, after further extension of time to make the corrections, Porter's license finally was revoked.

Appellant Porter attacks this action of the board in two directions: (1) He challenges the legality of the board itself; (2) he contends its proceedings were invalid because he was not told the identity of the complaining master plumber, and objects that he was not given opportunity to examine such complainant or present testimony of witnesses on his own behalf. Also he urges that on this appeal we are to inquire de novo into his alleged violation, the justification therefor, and the punishment to be imposed upon him, and that we should conclude in his favor, or if against him, sympathetically with regard to punishment, in view of his prior satisfactory record and the hardship which revocation of his license must entail.

1. The asserted illegality of the board of plumbing supervision of the department of health is based upon the contention that the Act of July 2, 1935, P. L. 561, 568, 53 PS §§4071, 4077a,[1] which created the board, violates article III, sec. 20, of the Pennsylvania Constitution because the board is a "special commission" to which the performance of a "municipal function" has been delegated, contrary to the constitutional interdiction.[2]

The act (section 3) directs the director of the department of health to appoint the board, to consist of the director himself, a representative of the house

---

[1] This act is an addition to the Act of June 7, 1911, P. L. 680, as amended by the Act of May 7, 1931, P. L. 101.

[2] Article III, sec. 20, provides: "The General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever."

drainage division of the division of housing and sanitation (a bureau under the control of the director of health), four actively engaged licensed master plumbers who are neither connected with the city government nor officers of a political party, and one licensed journeyman plumber. Three members of the board are appointed for a term of three years and two for a term of two years.

The board has these functions: (1) Conducting examinations to determine the qualifications of persons who apply to the director of health for licenses and certificates as master or journeyman plumbers or for positions as plumbing inspectors or supervisors, and certifying the names of competent applicants to the director of health as qualified to be licensed and registered; (2) making rules, regulations, and changes in specifications relative to construction of plumbing and house drainage which it deems necessary or advisable for the better protection of safety or health; (3) (a) hearing complaints made by licensed plumbers of irregularities committed by plumbers, and (b) suspending or revoking their licenses and certificates "upon cause shown", and (4) hearing complaints of plumbers against employes of the department of health connected with the plumbing division and recommending punishment or dismissal of such employes (sections 2, 4, 8). The board is directed to make rules for the conduct of its own business. Appeal from its actions suspending or revoking licenses or certificates is expressly allowed to this court "as in all other appeals made and provided for under the laws of the Commonwealth of Pennsylvania from executive bodies" (section 4).

The board denies that as created and empowered it is a special commission exercising municipal functions such as the legislature is prohibited from creating, but is merely an administrative arm of the department of health, under the control of that department of the city

government, and accordingly not the type of commission against which article III, sec. 20, is directed.

The question of the constitutionality of the appellee board has not been decided, but a consideration of the purposes and judicial treatment of article III, sec. 20, leads us to the judgment that the legislature did not violate that provision by the Act of 1935.

Article III, sec. 20, was drafted and adopted to avoid repetition of the unhappy experiences with commissions which, though not a part of the city government, were given power to handle municipal projects and spend money and incur public indebtedness in the exercise of that power. To be free to spend without the power or worry of getting the money to spend, and to be free of restraint by the taxing power, means trouble and vexation when payment must be provided. That was the mischief of special commissions to be remedied. The remedy was the purpose of article III, sec. 20, of the Constitution,[3] and to make a sure cure the language of the section was made broad.

---

[3] Mr. Justice Linn, writing the opinion in Tranter v. Allegheny County Authority et al., 316 Pa. 65, 78 (1934), states the matter aptly: "By 1873, when the convention was engaged in preparing the constitution, public opinion had recognized the economic mistake of taking from municipalities certain powers and conferring them on independent commissions, while, at the same time, requiring the municipality to pay the bills incurred by the commission without any restraining voice in the expenditure. The separation of the power to incur debts from the duty of providing for their payment by taxation, produced the principal mischief complained of and which it was sought to prevent. Notorious examples were the Public Buildings Commission, created to build the city hall in Philadelphia, Act of August 5, 1870 (1871), P. L. 1548 (Perkins v. Slack, 86 Pa. 270; Perkins v. Phila., 156 Pa. 554, 27 A. 356); and the Penn Avenue Commissioners, operating in the City of Pittsburgh, Act of April 2, 1870, P. L. 796 (Mellor v. Pittsburgh, 21 P. L. J. (O. S.) 185. The subject was considered by the convention with particular reference to the experience of these two cities (Debates, volume 2, page 697, et seq.), and that experience illustrates the character of the legislative interference with local government that was intended to be prevented."

But, despite the broad language, the courts dealing with the provision are in one consent with its history and purpose. That is the current of the decisions, if not always the reasoning. Thus the legislative grant to bodies not a part of the regular municipal taxing authority[4] of powers implying the ability to spend public money or levy taxes has been held unconstitutional: Wilson et ux. v. School District of Philadelphia et al., 328 Pa. 225, 240-241 (1937); Porter v. Shields, 200 Pa. 241 (1901); Mellon v. City of Pittsburgh et al., 21 Pitts. L. J. (O. S.) 185, 186 (1874). In this category fall the statutes held invalid in the cases cited by appellant's counsel: Perkins et al. v. Philadelphia et al., 156 Pa. 539, 554 (1893), and Philadelphia v. Spangler et al., 9 D. & C. 577 (1927). In both, the legislature attempted to transfer powers of control over property, in the Perkins case to a department of the city government which had no power to incur indebtedness, and in the Spangler case to the Fairmount Park Commission, a special commission created before the questioned amendment. The significant feature of the control over the property was that it required certain expenditures of money for which the city would be responsible, and over which the regular city tax-levying body would have no restraining voice. Conversely, where the legislative grant of power is to a body (such as a self-liquidating public authority to manage public property pending improvement or development) which does not acquire the power to incur debts for which the city is liable, and does not interfere with municipal improvement or property, the statute is upheld: Williams v. Samuel et al., 332 Pa. 265 (1938); Dornan v. Philadelphia Housing Authority et al., 331 Pa. 209, 230 (1938); Tranter v. Allegheny County

---

[4] If the power to incur indebtedness generally is in the body given control over the new project, no conflict with the Constitution arises: Stratton v. Allegheny County, 245 Pa. 519, 525 (1914).

Authority et al., 316 Pa. 65 (1934); cf. Brode v. City of Philadelphia, 230 Pa. 434 (1911).[5]

The assignment to a particular department of the municipal government or to an outside body of subordinate duties is not an infringement upon the control of the orthodox municipal authorities over the expenditure of funds and the exercise of their important executive prerogatives. Purely advisory functions may be performed by special commissions, since the municipal control is where it should be: Poor District Case (No. 1), 329 Pa. 390, 406 (1938); Walnut & Quince Street Corp. v. Mills et al., 303 Pa. 25, 33 (1931); Commonwealth ex rel. v. Woodring, 289 Pa. 437, 446 (1927). The same is true with respect to the duty of certifying that an expenditure is capital rather than current; the act is too minor to constitute a "municipal function": Kraus v. Philadelphia, 265 Pa. 425, 436 (1919).

Municipal government certainly in this day has much administrative detail and here in Pennsylvania and no doubt throughout the other States of the Union there are many statutes creating or authorizing a municipality to create boards and commissions to assist in the performance of those many details of city government. The day of picking up a tool to become a plumber is over. If sanitation is to be sure and universal, plumbing has to be more complex than the outhouse and spigot. And if a plumber is to be a handicraftsman, it is quite within awakened municipal

---

[5] For other ways in which the constitutional provision has been limited see Clark et al. v. Beamish et al., 313 Pa. 56, 64 (1933) (Secretary of Commonwealth not a special commission to carry voting machine acts into effect); Retirement Board of Allegheny County v. McGovern et al., 316 Pa. 161 (1934) (retirement board valid): Borough of Lansdowne et al. v. The Public Service Commission, 74 Pa. Superior Ct. 203 (1920) (Public Service Commission valid since exercises no municipal function); Brode v. City of Philadelphia, 230 Pa. 434 (1911); McKeown's Petition, 237 Pa. 626 (1912).

thinking that rules for plumbers and supervision over them rest somewhere, and we do not see in the questioned constitutional provision preclusion of a statute providing a body to do just that. The Act of 1935 is for that purpose. Appellant's unclean hands show its need. The act was framed to facilitate the qualification of plumbers and establishment of plumbing rules by placing in a board fitted by office and occupation the performance of those important details. It is a necessary and proper exercise of the police power over a business affected with a public interest. See Commonwealth v. Leswing, 135 Pa. Superior Ct. 485 (1939), Rock v. Philadelphia et al., 127 Pa. Superior Ct. 143 (1937), and New Castle City v. Withers, 291 Pa. 216 (1927). The grant of authority helps to make administrative efficiency, and is a proper delegation because it is a delegation of administrative functions properly limited to plumbing regulation to safeguard health and safety.[6]

The board aids the work of the department of health. It does not incur indebtedness other than the small payment to its members,[7] and we are of the judgment that it is not opposed to article III, sec. 20, of the Constitution. To conclude otherwise would limit the legisla-

---

[6] No question has been raised as to the impropriety of the legislative delegation of the powers given to the board aside from the alleged conflict with article III, sec. 20, and so it suffices to point out that, under the decided cases, no invalidity exists on that score. See Equitable Loan Society, Inc., et al. v. Bell, Secretary of Banking, et al., 339 Pa. 449, 461 (1940), appeal dismissed, 311 U. S. 621 (1940); Kellerman v. Philadelphia, 139 Pa. Superior Ct. 569, 574, 575 (1940) ("The legislature constitutionally may refer to a person or body of persons, within limits, set by the terms, purpose, or policy of the enactment, or by recognized scientific findings in various fields, the independent determination of facts upon which the application or enforcement of the law is to depend."), and cases cited and discussed therein.

[7] Section 4 of the act provides that the members of the board shall receive the sum of $10 for each day or session actually employed in carrying out the duties provided for by the provisions of the act.

ture's power to create desirable municipal administrative bureaus to an extent not contemplated by the framers of that constitutional provision: Cf. Junge's Appeal (No. 2), 89 Pa. Superior Ct. 548, 565 (1927); Ward's Appeal, 289 Pa. 458, 465 (1927) (holding board of zoning appeals nonviolative of article III, sec. 20). The case of Moll v. Morrow, 253 Pa. 442 (1916), cited and relied upon by appellant, is not against what we here think and conclude. There the legislature had created a bureau of public morals in the department of public safety in cities of the second class to investigate and act upon all questions and conditions arising from sex relationship affecting public morals, with power to enforce laws, prosecute violations, exercise such police powers as might become necessary, employ investigators, and use policemen supplied by the director of public safety. Although the members were appointed and removable by the mayor, the board was held to constitute an independent body, beyond the control of, even though not beyond removal by, the city authorities. The court was careful to point out that the bureau would incur expenses and perform its functions through agents and employes, including the appointment of a superintendent. Thus the Moll case involved a body not only empowered to incur expenses, the evil at which the constitutional prohibition primarily strikes, but clothed with important, independent, and broad executive powers. In contrast, the board of plumbing supervision of the department of health performs work, though of an important nature, that is auxiliary to and not independent of the department of health. Its members are appointed and removable by the director of health (see Constitution, art. VI, sec. 4, and Houseman et al. v. Commonwealth ex rel., 100 Pa. 222 (1882)), and the execution and enforcement of its rules are carried out by the director of health and his organization.

2. We are of the opinion that on this appeal we are to decide de novo all questions of fact and law. The Act of 1935 provides that the appeal to us from the board shall be "as in all other appeals made and provided for under the laws of the Commonwealth of Pennsylvania from executive bodies". The difficulty is the absence of a comprehending statutory rule governing the scope of review upon appeal from an administrative or executive body revoking a license to conduct a business or profession. An appeal from the revocation of a liquor license by the Liquor Control Board is heard by the common pleas court de novo, by virtue of express provision of the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, as reënacted and amended by the Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762, sec. 404, 47 PS §744-410: Mami's Liquor License Case, 144 Pa. Superior Ct. 285, 291 (1941). Likewise on appeal from the suspension of the license of a motor vehicle operator by the Secretary of Revenue (Act of June 22, 1931, P. L. 751, as amended June 27, 1939, P. L. 1135, sec. 10, 75 PS §193: Commonwealth v. Cronin, 336 Pa. 469, 473 (1939); Commonwealth v. Funk, 323 Pa. 390 (1936)[8]; revocation of the license of an engineer by the State Registration Board for Professional Engineers (Act of May 6, 1927, P. L. 820, sec. 13, 63 PS §143); a nurse by the State Board of Examiners for Registration of Nurses (Act of April 29, 1935, P. L. 93, sec. 6, 63 PS §210); a motion picture theatre by the municipal authorities in charge thereof (Act of May 20, 1913, P. L. 229, sec. 17, 72 PS §3083); a mental hospital by the Department of Public Welfare (The Mental Health Act of July 11, 1923, P. L. 998, sec. 201, as amended October 11, 1938,

---

[8] The Vehicle Code of May 1, 1929, P. L. 905, as amended by the Act of June 29, 1937, P. L. 2329, makes no provision for an appeal by the operator of a motor vehicle from the action of the Secretary of Revenue in the case of a revocation, as distinguished from a suspension, of a license: Brennan's Case, 344 Pa. 209 (1942).

P. L. 63, sec. 1, 50 PS §21) ; or one seeking to construct a wharf by the director of wharves, docks and ferries (Act of June 8, 1907, P. L. 488, sec. 19, 53 PS §4334). In such cases the court may affirm or reverse the order appealed from or enter such order of its own as the board or official might have entered and such order as to the court seems proper to do justice.

Other statutes provide that upon appeal the findings and rulings of the board or official suspending or revoking a license be given the effect of the findings of a referee in arbitration appointed under the provisions of the Act of May 14, 1874, P. L. 166, 5 PS §201 et seq. This is so in cases of appeal to the Dauphin County Court of Common Pleas from revocation or suspension of the license of a dentist or real estate broker by the Department of Public Instruction (The Dental Law of May 1, 1933, P. L. 216, sec. 5, as amended, 63 PS §124 (dentists) ; Real Estate Brokers License Act of May 1, 1929, P. L. 1216, sec. 10(d), as amended, 63 PS §440(d) ; Commonwealth, etc., v. Emerson C. Custis Co. et al., 139 Pa. Superior Ct. 22, 24, 25 (1940) (real estate brokers) ). Still other statutes require the court to hear the appeal solely upon the record below, though further testimony may be ordered where the record appears inadequate: appeal to Dauphin County court by undertakers (Act of June 10, 1931, P. L. 485, sec. 10, as amended, 63 PS §478j) ; and foreign insurance societies (Act of July 17, 1935, P. L. 1092, sec. 27, 40 PS §1077). There are also statutes that provide for appeals, similar to the one before us, containing no express provision relative to the scope of review upon appeal (e. g. pawnbrokers (Pawnbrokers License Act of April 6, 1937, P. L. 200, sec. 8, 63 PS §281-8) ; tenement houses (Act of June 11, 1915, P. L. 954, sec. 45, 53 PS §4003) ; insurance companies (The Insurance Company Law of May 17, 1921, P. L. 682, sec. 628, as amended June 23, 1931, P. L. 904, sec. 1, 40 PS §763) ). A majority of licensing statutes merely provide for

revocation without mention of an appeal (see, inter alia, statutes dealing with professions and occupations collected in 63 PS).

In determining what the legislature intended when it does not deal with the scope of judicial review of the action of the board, the extent of the safeguards afforded the complaining party in the hearings appealed from is a main consideration. The statutes which limit review by common pleas deal with appeals from proceedings which are at least formal enough to produce a complete and accurate record, findings, and conclusions of law that can be scrutinized, though the same is true in some of the situations where de novo review is directed. Where the hearing and action below is informal, inquiry merely into whether there has been an abuse of discretion is not a sufficient check. The power to revoke or suspend the license to pursue the whole of one's work and earn one's bread is a power not to be abused and therefore to be observed closely. A de novo review of an informal proceeding resulting in such revocation is therefore not to be considered overcautious or unnecessary interference with administrative expedition. See Freund, Administrative Powers Over Persons and Property, 279 (1928). See also Commonwealth v. Cronin, 336 Pa. 469, 474 (1939), and Colteryahn Sanitary Dairy v. Milk Control Commission of Pennsylvania, 332 Pa. 15, 20, 22 (1938). Informality of the proceedings before the board of plumbing supervision of the department of health is indicated in this case by the absence of any transcript of record, findings, or conclusions, and the complaints that appellant has not been able to avail himself of confrontation, cross-examination, or opportunity to introduce witnesses. Nor is any formal procedure provided in the act, the board being left free to make rules governing the conduct of its business.

We interpret the omission of the legislature to limit the scope of review as expressive of an intention that

unless the board established for itself a formal,[9] accurately and completely recorded procedure, with written findings of fact and conclusions of law, the scope of review should not be limited to a consideration of whether discretion was abused or sufficient evidence presented, but that the right of an aggrieved plumber to his license should be inquired into anew with the checks afforded by the forum of the courtroom.

We come now to the merits of the case.

The evidence presented before us, and the admissions in the pleadings filed, show that appellant filed blueprints and plan jackets which called for the installation of two vents in all the houses to be fitted by him. In the case of the dwellings in the 3500 block Meridian Street, the plan jackets indicated that such two vents were to be installed, and in the case of the houses in the 3400 block the blueprint filed with the department of health called for two vents in each house. In view of the requirement imposed by the rules and regulations of the bureau of health, as adopted by the board of plumbing supervision of the department of health, that a rear as well as a central air vent be installed in all cases where the plumbing fixtures are more than 12 feet from the central vent (a requirement which appellant admits full knowledge of and shown to be necessary for health), and the blueprints called for construction of plumbing (kitchen sink and laundry trays) which would require such second vent, we find that appellant represented to the plumbing authorities of the department of health that both central and rear vent pipes would be installed in all the houses. Appellant sought to justify the failure to install the rear vents on the ground that the kitchen sinks, instead of being placed against the rear walls, as originally contemplated, were installed along the party walls toward

---

[9] Strict adherence to legal rules of evidence is not necessary or desirable. See Davis, "An Approach to Problems of Evidence in the Administrative Process" (1942), 55 Harvard Law. Rev. 364.

the center of the houses, bringing them within the permitted distance of the central air-vent pipes. He stated that the department of health's inspector knew of and approved the changes, and that therefore he believed the need for the rear vent pipes had been eliminated. The evidence is not clear as to whether the sinks were set forward in all the houses not supplied with two vent pipes, but, admitting they were, this excuse is not valid. Appellant as a master plumber knew or should have known that, under the board's rule 7, any change in the work called for in the plans and blueprints filed with the department of health required submission to and direct written approval of that department. Furthermore, the failure to lead the drain pipes of the cellar laundry trays into a vent pipe, leaving that line without any ventilation whatever, is an omission that appellant's excuse cannot embrace. As a master plumber of many years' experience he must have known such lack of ventilation was not only in violation of the rules, but improper because it ignored the anti-siphonage and odor-disposal needs of the trays' drainage system. In his failure to do the right thing, we find appellant not remiss but deliberate.

Apparently in view of the expense and difficulty of the rear vent installation belatedly, the board granted appellant permission to cure all defects and irregularities by the method of installing the "Y" fixtures leading from the laundry trays to the central vent pipes. Appellant expressed willingness to make these changes and proceeded to do so in 17 of the 51 houses. Though he was suspended by the board on May 21, 1941, he was permitted to do other work after that time upon his mere promise to complete corrections. He insisted, however, that he was unable to secure admittance to any of the 34 houses not corrected and on October 22, 1941, when his license was revoked, they were and still are unchanged. Though there is no evidence contradicting appellant's testimony that he tried

unsuccessfully to acquire access to make the corrections, we do not accept it as truth because of the improbability that not one of the 34 occupants would accept were they approached properly with the request that such work be permitted in order to make their homes more healthful and safe and to comply with the requirements of the health authorities, at no cost to them.

Appellant's objection that he was not afforded the rights of confrontation and cross-examination and the opportunity to produce his own witnesses in the proceedings before the board may be disposed of without considering whether appellant was in fact prejudiced thereby, since it is our conclusion that we decide this case de novo on the record made in this court, where all appellant's legal safeguards were available to him. See Commonwealth v. Cronin, supra. As to his objection that he was not informed of the identity of the master plumber making complaint against him, it is pointed out that nowhere is it alleged that a demand for such identification was made, nor was any such demand or interrogation presented to the member of the board who testified before us.

Appellant is justly chargeable with violation of the rules established by the board for the protection of public health and safety. His conduct, we repeat, shows the need for the act and the board it created. But the absolute revocation of his license is, in our opinion, too strong. By his transgression he is not caput lupinum. Appellant has been engaged in plumbing work for over 25 years. There is no evidence that he has before violated any of the rules or engaged in any irregularity. He already has been deprived of his license for about three months. Completely to cut him off from his livelihood is too harsh a measure. For the sake of the occupants of the houses, we think he should be given further opportunity to enlist the aid of the department of

health[10] in order to complete the corrective work. Yet the board is not to be as whirling dust, and for his violation, done with knowledge of his wrongdoing, we consider that appellant's license should be suspended for an additional period of time. Accordingly, we enter the following

*Order*

The order of the board of plumbing supervision of the department of health revoking the master plumber license of Louis J. Porter is modified. The master plumber license of the said Louis J. Porter is hereby suspended for an additional period of six months from January 1, 1942, ending June 30, 1942, provided within that period the corrective work hitherto directed by the board of plumbing supervision of the department of health to be done in premises nos. 3402 to 3434 and 3403 to 3435, inclusive, Meridian Street, Philadelphia, shall have been completed, otherwise the suspension of the license shall continue until such corrective work is completed.

---

[10] The board took the position that it was no concern of its that entry could not be gained to make the corrections. But while the board does not itself have the function or power of taking steps to force occupants to permit changes on their premises necessary to public health, the department of health, with which it works in close association, does have such power: Act of June 7, 1911, P. L. 680, sec. 65, 53 PS §4152.