HIRAM B. KADISH *et al.*

*v.*

THOMAS R. LYON.

*Opinion filed October 23, 1907.*

1. LEASE—*when lease does not make lessee the equitable owner of the fee.*  A ninety-nine year lease which contains a provision that the lessee may purchase the property at any time within ten years for a specified price, and that "this agreement shall be considered a covenant running with the land and be binding on the heirs and assigns of the lessors," does not make the lessee, in equity, the holder of the fee, which would descend to his heirs at his death.

2. EXECUTORS AND ADMINISTRATORS—*power of administrator to carry out contracts of the deceased.*  An administrator may elect to carry out a contract of the deceased, not of a personal nature, without an order of the court to that effect, but in so doing he assumes the risk of being required to make good any loss that may ensue; but his acts for the purpose of complying with the contract, if performed in good faith and without fraud or collusion, so far as the living parties to the contract are concerned, bind the estate.

3. SAME—*when real estate is not impressed with trust through administrator's conduct.*  The fact that the lessors in a ninety-nine year lease know that the lessee's administrator is using the funds of the estate without an order of the court, in an honest effort to carry out the lessee's agreement to erect a building thereon, in order to comply with the terms of the lease, does not, of itself, impress the property with a trust in favor of the lessee's heirs.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. M. KAVANAGH, Judge, presiding.

On October 7, 1902, Hiram B. Kadish, Clara L. Kadish and Marion B. Kadish, plaintiffs in error, by their guardian, Hiram Barber, filed their bill in the superior court of Cook county against Thomas R. Lyon, defendant in error, for the purpose of ascertaining and establishing their interest in certain real estate in the city of Chicago, the title to which was in said Lyon, and for other relief.

The following statement is taken in large part from that found in plaintiffs in error's brief and argument:

The bill alleges that complainants are infant children and heirs-at-law of Leopold P. Kadish, deceased; that on September 1, 1890, Kadish, in his lifetime, entered into a ninety-nine year lease, in writing, with Mendell and others, the then owners of lots 7 and 8 in a certain block in a sub-division in the city of Chicago, Illinois, reserving as rent $2400 per year; that in said indenture it was, among other things, provided that said Kadish should, within one year from September 1, 1890, erect buildings upon said premises of the value of not less than $50,000; that to secure the agreement to erect said buildings, Kadish was required to and did enter into a bond to the said lessors in the penal sum of $5000; that said indenture contained a provision that said Kadish, his heirs or assigns, might acquire the full legal title to the said lots 7 and 8 in said indenture described, upon the payment of $40,000 at any time within ten years after the date thereof, "and this agreement shall be considered a covenant running with the land and be binding upon the heirs and assigns of said lessors;" that by reason of said provision Kadish became seized and possessed of a conditional fee in the said premises and lots; that Kadish began the erection of certain structures thereon, but departed this life at Chicago, intestate, on December 28, 1890, leaving him surviving his widow, Helen L. Kadish, and the complainants, his only heirs-at-law; that during his lifetime very little progress was made in the erection of said buildings; that the entire excavation for the foundations had not been made nor had the major part of the foundations been completed; that complainants are not advised as to what, if any, contracts for the erection of said buildings were let by Kadish or by his authority during his lifetime, and show, upon information and belief, that if any contract had been let by him or by his authority during his lifetime the same did not involve an expenditure of more than $15,-

000; that only a small amount of work had been done on said premises at the time of the death of Kadish and that the value of said work did not exceed $5000; that on January 8, 1891, Elbridge Hanecy, Edward Bertalot and Helen L. Kadish were appointed administrators; that during the course of administration a large sum of money came into the hands of said Hanecy and Bertalot, as such administrators, to-wit, more than $100,000, and that complainants were, respectively, entitled to a share of this sum as the heirs-at-law of said Kadish, deceased; that said moneys so received by said administrators, Hanecy and Bertalot, were trust moneys in their hands, held by them for the following purposes only, to-wit: First, payment of expenses of administration; second, payment of such claims as should be allowed against the estate by the probate court of Cook county, Illinois; third, for distribution among the several heirs-at-law of the said Kadish, deceased; that said Hanecy and Bertalot, as such administrators, during the year 1891, without any authority in law whatever, diverted and misapplied the same, to the extent of $90,000 and upwards, in and about the erection of said buildings; that the buildings comprise a four-story and basement brick and stone building situated on the west end of said lots, with a frontage of 100 feet on Wabash avenue and a depth of 48 feet, divided into stores below and twelve flats above, and a rear brick and stone building 134 feet deep by 92 feet wide, three stories high, entered by an enclosed passageway from the front of Wabash avenue; that Hanecy and Bertalot, immediately after their appointment as administrators, took possession of said premises and held possession and control thereof until on or about April 1, 1893, when such possession or control was surrendered by them to the said Helen L. Kadish and complainants, who thereupon entered into the possession and control of said premises and retained such possession and control until on or about July 1, 1902, when such possession was surrendered by them to the defendant,

Lyon, the assignee of said Mendell and others, upon his demand therefor; that at the time of and during the progress of the erection of said buildings the said Mendell and others had notice and knowledge of the fact that said Hanecy and Bertalot, as such administrators, had taken possession of said premises and were improperly making use of the moneys held by them in trust, as administrators, in the erection and construction of said buildings; that a very large proportion of the work, labor and material made use of in the erection of said buildings was done and furnished under contracts made by various contractors with the said Hanecy and Bertalot, or with Messrs. Furst & Rudolph, the architects of said buildings, by the direction of said Hanecy and Bertalot, after the death of said Kadish, and that such contracts were made and entered into without any authority in law whatever, and were not the contracts of said Kadish, deceased; that in the then condition of the estate, and in view of the large amount of annual fixed charges upon said premises, including ground rent, taxes, etc., it was the plain and manifest duty of said administrators, upon their appointment as aforesaid, to so manage the affairs of said estate as to facilitate and provide for the early exercise of the right to acquire the fee simple title to said premises under and in accordance with the terms and provisions of said written indenture of lease, and thus prevent the ultimate forfeiture of the interest of said estate therein, and that it was not within the scope of the lawful powers and authority of said administrators of said estate to engage in the erection of said buildings after the decease of Kadish; that the share or interest of the complainants in the said fund was $60,000 and upwards; that no claims or demands allowed against the estate of said Kadish, deceased, now remain unsatisfied; that afterwards, on or about September 21, 1893, Mendell and others, owners of said realty, conveyed the same, and their interest in said lease, to defendant, Lyon; that afterwards, on May 13, 1902, defendant, Lyon, served

upon complainants a notice of forfeiture of their right in said premises for the non-payment of rent claimed by him to be due and payable under the terms of said lease, and subsequently, on June 30, 1902, said Lyon caused to be served upon complainants a final declaration of forfeiture of their interests, and that afterwards, on July 1, 1902, Lyon took possession and now claims to be the exclusive owner of said premises and the buildings thereon; that complainants are in equity entitled to a share or interest in said buildings for the said sum of $60,000 and upwards, for their share in the said money so improperly diverted and misapplied by the said Hanecy and Bertalot, as administrators, and that such share or interest is in no manner subject to the rights or interest of said Lyon, and that complainants are entitled to have the same declared superior to the rights and interests of Lyon in said premises.

The bill prays that defendant be required to answer, and that complainants may be declared to have a share or interest in and to said buildings to the extent of their interest in the moneys so diverted and misapplied by the said administrators in the erection and construction thereof, and that such share or interest may be declared superior to the rights and interest of the said defendant, Thomas R. Lyon, in said buildings; that a receiver be appointed for the said buildings and income; that said Thomas R. Lyon may be required to account for rents and profits of said buildings, and that complainants may have such further and other relief in the premises as the nature of their case may require.

The only parties to the suit were the Kadish children, who were complainants, and Lyon, who was defendant.

To the bill Lyon interposed a general and special demurrer, which was sustained by the court, and the bill was dismissed for want of equity. Complainants below bring the record here by writ of error, and urge that the superior court erred in sustaining the demurrer and dismissing the bill.

GEORGE F. ORT, for plaintiffs in error.

CHARLES L. BARTLETT, and SHERMAN C. SPITZER, (HARRISON B. RILEY, of counsel,) for defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Plaintiffs in error urge that by the indenture of September 1, 1890, which provided that Kadish, his heirs or assigns, might purchase from the lessors, their heirs or assigns, the property at any time within ten years for the sum of $40,000, and that this agreement should be considered a covenant running with the land, binding upon the heirs and assigns of said lessors, Kadish became, in equity, the holder of the fee in the premises, and that the same, upon his death, descended to his heirs. We think this ignores the distinction between a contract for the purchase of real estate and a contract by which the owner gives to another the option to purchase lands. Kadish and those who succeeded him would acquire no interest in the land by virtue of this contract for an option until he or they had exercised their right to purchase. (*Bostwick* v. *Hess,* 80 Ill. 138; 18 Am. & Eng. Ency. of Law,—2d ed.—p. 632.) The provision that the agreement to sell should be a covenant running with the land does not alter the situation. That was probably inserted by the parties to make certain the fact that the land, as well as the owners thereof, should be bound for the performance of the contract in the event that Kadish, or those succeeding to his rights, elected to purchase.

It is next urged that the administrators wrongfully used the trust fund in their hands in the construction of the buildings which had been begun by their intestate, and that for this reason plaintiffs in error have the right to follow the trust fund into the real estate, and be decreed to be the owners of the real estate, to an extent equal in value to the amount of the trust fund so improperly diverted.

It appears from the bill that the administrators used the funds of the estate to carry out the contract of the intestate, made with Mendell and his associates. Knowledge of that fact possessed by the owners of the real estate would not charge them with any equity in favor of the plaintiffs in error. The latter, however, by their brief and argument urge that this fund was wrongfully used in the construction of the building; that the owners of the real estate had knowledge of that fact, and that for this reason the relief prayed by the bill should be awarded. The complaint is, that the administrators did not obtain from the probate court any order or direction to carry out the contract of their intestate, as contemplated by section 126 of chapter 3, Hurd's Revised Statutes of 1905, which reads: "All contracts made by the decedent may be performed by the executor or administrator when so directed by the county court." We think that no case is by the bill made which authorizes the intervention of a court of equity. If an administrator elects to perform a contract entered into by his intestate for the benefit of the estate without obtaining the order or direction contemplated by section 126, *supra,* where the contract is not of a strictly personal nature, he may do so, taking upon himself the risk of being required to make good any loss that may ensue. If he obtains the order or direction contemplated by the statute after having fully disclosed to the court all the facts and circumstances proper for the court's consideration, and carefully and exactly carries out the order or direction, he will, no doubt, be thereby relieved from personal liability. If he acts without such order or direction but in good faith, for the purpose of complying with the contract of the deceased, his acts, so far as the living parties to the contract are concerned, are binding upon the estate. (*Smith* v. *Wilmington Coal Mining Co.* 83 Ill. 498; *Jessup* v. *Jessup,* 102 id. 480.) If the administrator and the living parties to the contract, under the guise of performing the contract, should fraudulently collude to-

gether for the purpose of making such disposition of the
funds of the estate as that such funds would be lost to the
estate and pass into the hands of and become the property
of such living parties, a question not arising upon this rec-
ord would be presented.

The decree of the superior court will be affirmed.

*Decree affirmed.*