Berks Broadcasting Company, Appellant, *v.* Craumer et al.

Argued January 9, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused May 26, 1947.

*Gilbert W. Oswald,* with him *Bernard G. Segal, William A. Schnader, John A. Moss* and *Schnader, Kenworthey, Segal & Lewis,* for appellant.

*Robert Grey Bushong,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, May 7, 1947:

The determinant of this litigation is the provision of the Business Corporation Law of May 5, 1933, P. L. 364, section 701, that a corporation, in computing a surplus from which cash dividends may lawfully be paid, must not include as an asset any unrealized appreciation in the value of its fixed assets. The application of that mandate to the uncontroverted facts in this case compels a reversal of the judgment for defendants which was entered by the court below.

The circumstances underlying the controversy, though intricate in detail, are simple in substance. Briefly stated they are as follows:

In 1931 the three defendants, together with one Landis, incorporated and organized the plaintiff company, Berks Broadcasting Company, under the Corporation Act of 1874, for the purpose. of constructing and operating a radio broadcasting station in Reading. The authorized capital was $100,000, consisting of 1000 shares, each of a par value of $100, and stock in that amount was issued to the four incorporators, who thereupon became the directors of the company. According to the book entries of the corporation the stock was fully paid for by the receipt from each of the shareholders of $5,000 and by the fixing of a value of $80,000 upon an asset denominated "Franchise and Promotion Expense". A year later this latter item was written off the books and in its place were substituted entries (1) of $50,000 as an amount "Due on Unpaid Stock Subscriptions" and (2) of the following "write-ups" or increases in the valuations of fixed assets of the company over and above the cost of those assets less depreciation: Land $7,000, Buildings $9,000, Transmitter and Equipment $7,000, Furniture and Fixtures $3,000, and Building Improvements $4,000,—a total of $30,000. It was stated that these "write-ups" were "to record re-appraisal of Fixed Assets as of 8/31/32 by officers of Corporation". As against the $50,000 entry of unpaid stock subscriptions each of the shareholders paid the sum of $4,200, thus reducing that item to $33,200, and in 1933 it was cancelled altogether and in lieu thereof an item in the same amount was entered as an asset under the designation of "Good Will and Promotion Expense". This was reduced in 1935 by the sum of $20,000, and $4,000 was eliminated from the "write-ups". As of December 31, 1943 the balance sheet of the company showed assets in excess of the liabilities and the issued capital stock in the amount of $2,545.94. However, the existence of that alleged surplus depended on the inclusion in the assets of the "write-ups" of $26,000 which still remained on the balance sheet, for, if that

amount were eliminated, so far from there being a sur-plus there would then have been a deficiency to the extent of $23,454.06.

In June 1944 the four shareholders entered into an agreement for the sale of their stock to certain parties for $210,000, subject to the approval of the Federal Communications Commission. Until that approval was forthcoming and final settlement for the stock was made the sellers were to continue in control of the company. In April, two months before the making of the agreement, defendants had declared and paid a dividend of $4,000. The approval by the Commission being de-layed for a considerable period, settlement for the stock was not made until January 1945, and meanwhile the directors declared and paid further dividends of $4,000 in July, $2,000 in October, and $3,000 in December, which, with the April payment, made a total during 1944 of $13,000. These dividends were declared on the basis of earnings of the company during that year of $12,309.78, which, together with the alleged surplus of $2,545.94 as of the end of the year 1943, made a surplus of $14,855.72; that amount, being $1,855.72 in excess of the dividends paid during 1944, would have justified those payments, but it would be far short of require-ments if the $26,000 "write-ups" were to be excluded from the balance sheet. The corporation, now under the control of the new shareholders, brought the present action to recover for its treasury the $13,000 which it alleged defendants had unlawfully declared and paid out as dividends.

One of the basic principles of corporation law is that the capital of a corporation must not be impaired in any manner, except, of course, as such an impairment may involuntarily occur through losses resulting from the operation of the company's business. It is illegal to declare and pay dividends from other than a surplus consisting of an excess in the value of the assets over the aggregate of the liabilities and the issued capital

stock. The object of this prohibition is to afford a margin of protection for creditors in view of the limited liability of the shareholders, and also to protect the interest of the shareholders themselves by preserving the capital so that the purposes for which the corporation was formed may be carried out.

The real problem that arises in the implementation of this legal principle is in regard to the computation of the surplus from which dividends may properly be declared and paid, and, in that connection, one of the rules which has been generally recognized and adopted [1] is that such a surplus must be a bona fide and not an artificial or fictitious one; it must be founded upon *actual* earnings or profits and not be dependent for its existence upon a theoretical estimate of an appreciation in the value of the company's assets. The reason why a purely conjectural increase in valuations cannot be considered for the purpose of dividends is because such re-appraisals, however apparently justified and accurate for the time being, are subject to market fluctuations, are merely anticipatory of future profit, and may never be actually *realized* as an asset of the company.

The rule thus stated is expressly embodied, as a categorical imperative, in the Business Corporation Law of 1933.[2] Section 701 A provides that "no corporation shall pay dividends: (1) In cash or property, except from the surplus of the aggregate of its assets over the aggregate of its liabilities, including in the latter the amount

---

[1] *Southern California Home Builders v. Young*, 45 Cal. App. 679, 188 P. 586; *Kingston v. Home Life Insurance Co. of America*, 11 Del. Ch. 258, 101 A. 898; 11 Del. Ch. 428, 104 A. 25; *Sexton v. C. L. Percival Co.*, 189 Iowa 586, 177 N. W. 83; *Titus v. Piggly Wiggly Corporation*, 2 Tenn. App. 184; *Dealers' Granite Corporation v. Faubion*, 18 S. W. 2d 737 (Tex. Civ. App.); Fletcher, Cycl. Corps. Vol. 11, pp. 862, 863, section 5345; 13 Amer. Jur. 656, 657, section 658; see also *Coleman v. Booth*, 268 Mo. 64, 186 S. W. 1021.

[2] Having been organized under the Corporation Act of 1874 the plaintiff corporation became subject to the provisions of the Business Corporation Law by virtue of section 3A thereof.

of its stated capital, *after deducting from such aggregate of its assets the amount by which such aggregate was increased by unrealized* [3] *appreciation in value or revaluation of fixed assets.*" [4] (Italics supplied.) Section 707 provides that "If any dividend shall be paid, or if any withdrawal or distribution of the corporate assets shall be made, except as provided in this act, the directors under whose administration the same were made, . . . [with an exception not here relevant] shall be jointly and severally liable to the corporation in an amount equal to the amount of the unlawful dividend or the unlawful withdrawal or distribution of assets." It is clear, therefore, from these express provisions that since the "write-ups" of $26,000 represented an unrealized appreciation in value of the plaintiff company's fixed assets, their inclusion in determining the existence of a surplus from which dividends might be declared was unlawful, and since, when eliminated, there would be, not a surplus, but a revealed deficiency in capital, it would follow that the corporation is now entitled to recover from these defendants the amount improperly distributed by them as dividends.

What are the defenses sought to be interposed to the corporation's right of recovery? Defendants apparently place chief reliance upon the Act of July 17, 1935, P. L. 1123, which amends section 701 of the Business Corporation Law by adding to the words: "after de-

---

[3] "Realize" means "to convert into actual money; as, to *realize* assets": Webster's New International Dictionary.

[4] It may be noted that section 702 carries out the same principle by providing that "Cash or property dividends shall not be paid out of surplus due to or arising from: (1) Any profit on treasury shares before resale; or (2) Any unrealized profits due to increase in valuation of inventories before sale; or (3) The accrued portion of unrealized profits on . . . obligations for the payment of money purchased or acquired at a discount; or (4) The unaccrued or unearned portion of any unrealized profit in any form whatever . . ." In the present case, however, we are concerned only with unrealized appreciation in value of the corporation's *fixed* assets.

ducting from such aggregate of its assets the amount by which such aggregate was increased by unrealized appreciation in value or revaluation of fixed assets", the words *"unless the amount thereof shall have been transferred to, or included in, its stated capital"*. But defendants seem to be confused in regard to the meaning of the term *"stated capital"*. The "write-ups" in valuation of the plaintiff company's fixed assets were *not* transferred to, or included in, its stated capital. "Stated Capital" is defined in section 2 of the Corporation Business Law as meaning "at any particular time, the sum of the par value of all shares then issued . . . and such other amounts as may have been transferred to the stated capital account of the corporation, whether from the issue of shares, as a share dividend, or otherwise, . . ." What obviously was designed, therefore, by the words: "unless the amount thereof shall have been transferred to, or included in, its stated capital", was that the amount of unrealized appreciation or "write-ups" was not to be included among the assets of the corporation for dividend purposes unless the stated capital was increased to the same extent,—an increase that might be effected *by the issue of additional stock in that amount, as by a stock dividend.* The prohibition against declaring and paying a dividend based on unrealized appreciation in value or revaluation of fixed assets is confined by section 701 of the Business Corporation Law to dividends *"in cash or property";* there is no such prohibition against declaring a *stock* dividend to represent the alleged increases in value. The reason for this distinction is that a stock dividend cannot affect creditors or shareholders adversely since, unlike a cash or property dividend, it does not decrease the company's assets.

Defendants assert that even with the "write-ups" of $26,000 eliminated from the company's balance sheet there would have been enough assets to warrant the declaration of the dividends if, instead of the reduced

"Good Will and Promotion Expense" item of $13,200, there were restored the original "Franchise and Promotion Expense" item of $80,000. This contention apparently rests upon the proposition that the original value of the franchise, on the basis of which the stock was issued, still exists, even though defendants saw fit from time to time to reduce its valuation and to substitute other items in its place. Aside from the fact that they never actually attempted to reinstate the original valuation on their books,[5] they did nothing more, in making such successive reductions, than what is quite usually done by corporations, namely, the gradual elimination of such intangibles from the balance sheet. The present record does not disclose the nature or the terms of the "franchise" which the company acquired,—whether it was perpetual, limited, or indeterminate; if limited, it would naturally have to be amortized over its term; if indeterminate, and subject to revocation at the pleasure of the Commission which had granted it, proper accounting would require that it be written off as quickly as possible.[6] As to defendants' argument that the high price paid for the stock indicates that a surplus must have existed, it is sufficient to say that the market price, being dependent, as it undoubtedly was, upon speculative considerations of future possibilities, has no relation whatever to the factors which the law prescribes as determinative of the right of a corporation to declare dividends.

Since, therefore, the general principles of corporation law, the rules of accounting, and the express mandate of the Business Corporation Law, all alike prescribe that the items representing unrealized appreciation in

---

[5] As to what might have been their right to do this, see *Stapley v. Read Brothers, Ltd.* [1924] 2 Ch. 1.

[6] As to the proper amortization of items of good will and other intangibles, see Reiter, "Profits, Dividends and the Law", chap. XII, pp. 144 et seq.

the valuation of the company's assets cannot be included in computing a surplus from which dividends may lawfully be paid, the court below erroneously entered judgment for defendants. On the contrary, there being no factual issue the court should have entered judgment for the plaintiff corporation.

Judgment reversed, and record remanded with direction to enter judgment for plaintiff and against defendants in the sum of $13,000 with interest as set forth in the statement of claim.