## Philadelphia *v.* Philadelphia Transportation Co., Appellant.

Argued October 4, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Hamilton C. Connor, Jr.,* with him *Peter Platten, Allen Hunter White,* and *Ballard, Spahr, Andrews & Ingersoll,* for appellants.

*David Berger,* City Solicitor, with him *William D. Valente* and *Jacob J. Siegal,* Assistant City Solicitors,

and *Levy Anderson,* First Deputy City Solicitor, for appellees.

Opinion by Mr. Chief Justice Horace Stern, October 18, 1956:

This is an appeal from the grant of a preliminary injunction restraining the payment of a dividend to its stockholders by the Philadelphia Transportation Company.

The dividend in question—one of thirty cents on each share of the common stock of the Company, payable October 1, 1956,—was declared by the Board of Directors on August 28, 1956. The action thus taken was over the objection of the City's members of the Board, who contended that the dividend was illegal in that it impaired the capital of the Company.

The City of Philadelphia, the Mayor of the City, and the City's representatives on the Company's Board of Directors, brought the present action in equity to restrain the payment of the dividend. Their complaint alleged that the aggregate of the Company's assets did not exceed $50,000,000, that its liabilities exceeded $68,-000,000, that its capital stock exceeded $26,000,000, that its capital deficit was therefore not less than $44,-000,000, and that there was no earned surplus from which a dividend might lawfully be paid. It was averred that unless the payment were restrained by the court the damage to the City of Philadelphia would be irreparable. On plaintiffs' motion the court, on September 13, 1956, enjoined defendant, until further order, from paying the proposed dividend, and directed that a further hearing should be had on September 18. Meanwhile defendant filed preliminary objections to the complaint and also a motion to dismiss the preliminary injunction. The scheduled hearing began on September 18 as ordered, during the course of which the

court refused the motion to dissolve the preliminary injunction and dismissed the preliminary objections. On September 19, defendant took the present appeal from the grant of the preliminary injunction, and the further taking of testimony was thereupon continued, to be resumed at a date to be subsequently fixed.

The law governing the question of the legality or illegality of the declaration and payment of a dividend by a corporation is firmly established by both statutory and decisional law. The Act of May 23, 1913, P. L. 336, provides: "That all corporations . . . may, at any time or times, declare dividends of so much of their net profits as shall appear advisable to the directors; . . . but such dividends shall in no case exceed the amount of the net profits actually acquired by the company, so that the capital stock shall never be impaired thereby." And in *Berks Broadcasting Company v. Craumer,* 356 Pa. 620, 623, 624, 52 A. 2d 571, 573, 574, it was said: "One of the basic principles of corporation law is that the capital of a corporation must not be impaired in any manner, except, of course, as such an impairment may involuntarily occur through losses resulting from the operation of the company's business. It is illegal to declare and pay dividends from other than a surplus consisting of an excess in the value of the assets over the aggregate of the liabilities and the issued capital stock. The object of this prohibition is to afford a margin of protection for creditors in view of the limited liability of the shareholders, and also to protect the interest of the shareholders themselves by preserving the capital so that the purposes for which the corporation was formed may be carried out." It is obvious, therefore, that if the allegations of the complaint in the present action should ultimately be established as true, namely, that there does exist a capital deficit of not less than $44,000,000, and that there was

no earned surplus from which the dividend might lawfully be paid, such payment would be illegal and should be enjoined at the instance of a proper party in interest. While defendant Company has not yet filed an answer to the complaint it appears from the discussion in the course of the hearing before the court below that the Company strenuously denies these averments of the City and, on the contrary, maintains that its assets amount to $102,000,000 and that therefore the payment of the proposed dividend would be entirely legal as coming out of earned surplus and not involving any capital impairment. It is clear that the issue thus raised is purely a factual one which can be decided only on the basis of the testimony taken and to be taken at the hearing before the court below which was interrupted by the filing of this appeal. Pending the determination of this controlling question the issuance of a preliminary injunction was entirely proper, and indeed practically necessary in order to preserve the rights of the City in case the issue should finally be decided in its favor, because it would otherwise have suffered irreparable harm had the dividend actually been paid meanwhile to the Company's 24,000 stockholders scattered throughout the country: cf. *Pennsylvania State Chamber of Commerce v. Torquato*, 386 Pa. 306, 125 A. 2d 755; in that event there would not be any adequate remedies at law available to the City which therefore would be entitled to seek equitable relief by way of a preliminary injunction: *Duquesne Light Company v. Upper St. Clair Township*, 377 Pa. 323, 105 A. 2d 287. On the other hand, the stockholders, if it be ultimately determined that the dividend was properly payable, would have suffered merely a temporary delay in their receipt of the dividend payments, unavoidable under the circumstances. Of course it is important that the hearings on the issue involved should be conducted

by the parties and the court as expeditiously as possible.

As far as the present appeal is concerned, it has been stated over and over again that on an appeal from a decree awarding a preliminary injunction the Supreme Court will consider only whether any apparently reasonable grounds for the action of the court below existed, and the decree will be affirmed unless the record presents palpable legal error.[1]

This brings us to the principal contention of the defendant, namely, that the court below erred in the granting of the injunction because the averments of the complaint did not establish that the City of Philadelphia had the legal status or was such a party in interest as to entitle it to contest the payment of the dividend. The court, in a well considered opinion, decided to the contrary, and, in our opinion correctly. It is not necessary to discuss in detail all the provisions in the agreement of July 1, 1907, between the City and the Company's predecessor[2] which gave to the former extensive rights in the management and control of the Company and covered various other aspects of their relations. Suffice it to say that the City, under the terms

---

[1] Examples: *Borough of Sunbury v. The Sunbury and Susquehanna Railway Company*, 241 Pa. 357, 88 A. 543; *Holden v. Llewellyn*, 262 Pa. 400, 105 A. 639; *Philadelphia Record Co. v. Curtis-Martin Newspapers, Inc.*, 305 Pa. 372, 157 A. 796; *Golden v. Markson Coal Co.*, 351 Pa. 493, 41 A. 2d 660; *Trainer v. International Alliance of Theatrical Stage Employees*, 353 Pa. 487, 46 A. 2d 463; *Murray v. Hill*, 359 Pa. 540, 59 A. 2d 877; *Cohen v. A. M. Byers Co.*, 363 Pa. 618, 70 A. 2d 837; *Roth v. Columbia Distributing Co. of Allentown*, 371 Pa. 297, 89 A. 2d 825; *New Kensington v. Municipal Authority of the City of New Kensington*, 383 Pa. 182, 118 A. 2d 149; *Lindenfelser v. Lindenfelser*, 385 Pa. 342, 123 A. 2d 626.

[2] The defendant Company, as successor to the Philadelphia Rapid Transit Company, is subject to all the obligations assumed by the latter in that agreement, which will therefore be treated herein as if made originally with the defendant Company.

of that agreement, has substantial direct interest in the Company's financial affairs. Among the provisions is that the Company must pay an annual fee of $360,000 to the City in lieu of license fees; the Company is required to make payment to the City for the franchises granted on a sliding scale basis which, at the present time, is said to approximate $1,000,000 per year; the increase of capital stock or further indebtedness by the Company or the assumption of further obligations without the consent of the City is prohibited; the liquidation of stocks, leaseholds or franchises without the consent of the City is prohibited; the acquisition of additional capital equipment and the raising of funds for capital expenditures without the consent of the City is prohibited; there is a provision for the payment of a share of the Company's profits to the City after a specified amount of profit has been earned; the Company is required to file an annual statement with the City Controller of receipts and expenditures for examination and report to City Council; the Company is required to keep and maintain at all times the property and certain large subway and elevated facilities which had been constructed by the City, including buildings, equipment and rolling stock demised thereunder, in good condition, maintenance and repair during the life of the lease. From all such provisions it must be apparent that the City is not only in the position of a general creditor of the Company, as appellant apparently concedes, or of an obligee entitled to the performance of the Company's various contractual obligations, but its rights as such, as well as in its capacity as lessor and as the holder of an option hereinafter referred to, give it a far greater interest in connection with the management and finances of the Company than even an ordinary creditor might have. Not only is it hornbook law that a mortgagee, lien creditor or contingent remain-

derman may enjoin the mortgagor, debtor or life tenant from committing any acts injuring or tending to injure the property, but, by the Act of May 21, 1921, P. L. 1045, any creditor, even one whose claim has not yet matured, may restrain an insolvent debtor (as the City's allegations would stamp the Company as being) from disposing of his or its property without a fair consideration and irrespective of any actual fraudulent intent (which here, of course, does not exist).

However, most important of all on this question is the provision of the agreement between the City and the Company which gives to the City the right to purchase all the Company's property upon any first day of July thereafter upon payment of an amount equal to the sum of the face amount, or call price if any, and accrued interest of all then outstanding bonds, and all then outstanding prior lien bonds, mortgages and ground rents on the Company's property plus the par value of all its then outstanding preferred stock and an amount equal to ten (10) dollars per share for all its then outstanding common stock and the amount of its then undistributed corporate surplus, if any, this right to cover the entire transportation system and property, leaseholds and franchises of the Company at the time the City exercises the option. Thus it will be seen that an illegal disposal of any part of the Company's property, which includes, of course, its cash assets, would correspondingly diminish the value of the property at the time when the option might be exercised. The Company argues that if the present proposed dividend is being paid from an earned surplus the City's interest would not be harmed thereby since the cost of exercising the option would be reduced in exactly the same amount as that of the dividend paid out; however, if the contention of the City proves correct there *is* no undistributed surplus and therefore any

distribution of the Company's funds would reduce its assets without a corresponding reduction in the price to be paid by the City upon the exercise of its option, thus working irreparable harm to the City in the enjoyment of its rights thereof. The Company contends that the City, as optionee, has no legal or equitable interest in the company's *property as such,* but it certainly does have an interest *in its right under the agreement to exercise its option* according to the terms and at the price therein provided and without any intervening impairment, if illegal, of the value of the property which is the subject of the option.

The Company argues that, if the City's allegations are correct as to the comparatively small value of the Company's assets, the option would be of no real economic value to the City and would probably, therefore, never be exercised by it, but the City may sometime choose to exercise it for reasons entirely apart from the economic standpoint but which it may consider to be in the best interest of its citizens, and its right so to do cannot be defeated. And, finally, the Company contends that, even if the value of the City's option be improperly impaired, it may acquire the Company's property by condemnation, but this also is an untenable argument since the price to be paid for the property according to the option is determinable by a fixed formula whereas a condemnation proceeding must depend upon the uncertain decision of a fact-finding tribunal as to the value of the property then being acquired.

In conclusion, it is to be borne in mind that the facts averred in the complaint must, *at this stage of the proceedings,* be taken as true while the *ultimate determination* of the issue will depend upon the findings of the court below based upon the testimony to be presented by the parties in support of their respective contentions as to the value of the Company's assets.

The order granting the preliminary injunction is affirmed, costs to abide the event.

——————

DISSENTING OPINION BY MR. JUSTICE BELL:

I believe it would be beneficial to all parties in interest, if the difficult and highly technical issue of insolvency were threshed out and quickly decided, but I am forced to agree with the defendants' contention that the City at the present time has no standing to enjoin the payment of a dividend.

The City filed a complaint against the Philadelphia Transportation Company to enjoin the Company from paying a regular quarterly dividend of 30 cents a share to its 24,000 stockholders.

The principal ground on which the City relies for an injunction was its averment that the Company's *assets* total $50,000,000. instead of $102,000,000., as set forth in the Company's latest balance sheet, with the result that the Company has *a capital deficit of $44,000,-000.* instead of an earned surplus; and consequently a dividend cannot be paid when the Company is hopelessly insolvent. These charges, if made by a plaintiff who had a legal status to bring the suit and proved by clear and convincing evidence, would justify a Chancellor in issuing an injunction.

The Chancellor issued a preliminary injunction against the payment of the proposed dividend, and subsequently dismissed defendants' preliminary objections and their motion to dissolve the preliminary injunction.

On September 20, 1956, pursuant to the Court's directions, plaintiffs proceeded to present evidence to support the allegations of their complaint. That afternoon, defendants, without giving plaintiffs an oppor-

tunity to present their evidence, which obviously would be rather voluminous, took an appeal to this Court. Defendants have a right of appeal under such circumstances, but the questions before us are very limited: (1) Were there reasonable grounds for the lower Court to issue a preliminary injunction; and (2) Was the injunction justified by applicable legal principles? *Roth v. Columbia Distributing Company*, 371 Pa. 297, 89 A. 2d 825; *Lindenfelser v. Lindenfelser*, 385 Pa. 342, 123 A. 2d 626.

In *Lindenfelser v. Lindenfelser*, 385 Pa., supra, the Court said (p. 343) : "Our uniform rule is that, on an appeal from a decree *which refuses, grants or continues a preliminary injunction*,\* we will look only to see if there were any apparently reasonable grounds for the action of the court below, and we will not further consider the merits of the case or pass upon the reasons for or against such action, unless it is plain that no such grounds existed or that the rules of law relied on are palpably wrong or clearly inapplicable: *Commonwealth v. Katz*, 281 Pa. 287, 288, 126 A. 765; *Lesher v. Thomas S. Cassner Co.*, 285 Pa. 43, 44, 131 A. 657; *Murray v. Hill*, 359 Pa. 540, 541, 59 A. 2d 877; *Cohen et al. v. A. M. Byers Company et al.*, 363 Pa. 618, 619, 70 A. 2d 837."

A dividend may lawfully be paid only out of net profits or earned surplus: *Gillingham v. Gillingham & Son Co.*, 260 Pa. 559, 103 A. 991; *Branch v. Kaiser*, 291 Pa. 543, 140 A. 498; *Pennsylvania Knitting Mills v. Bayard*, 287 Pa. 216, 134 A. 397; Act of May 23, 1913, P. L. 336, §1, 15 PS §631. Cf. *Berks Broadcasting Co. v. Craumer*, 356 Pa. 620, 52 A. 2d 571.

The general rule is well established that the Board of Directors have the right and power to determine

---

\* Italics throughout, ours.

242

"whether dividends shall be paid, when, in what circumstances and in what sum, and . . . the action of the board of directors is final unless, on appeal to equity, fraud or abuse of discretion [or illegality] can be shown. In such case the plaintiff, of course, has the burden of proof": *Jones v. Motor Sales Co.,* 322 Pa. 492, 495, 185 A. 809.

In order to determine whether the Chancellor had reasonable grounds to issue and continue the preliminary injunction, and whether the City has a legal status to bring a complaint in equity to enjoin the payment by the Philadelphia Transportation Company of a regular dividend of thirty cents, it is necessary to ferret out the facts which are somewhat hidden by the smog which has unfortunately enveloped this case.

The City of Philadelphia (a) had entered into an agreement in 1907 with defendants' predecessor company, and (b) had also executed with defendants several leases of certain City facilities, namely, the Frankford Elevated, the Bustleton Surface Line and the Broad Street Subway. Two of the leases will expire in the near future, and the City has demanded that these leases be extended at the present rental, or that the Company sell all its assets to the City *at the price fixed by the City.* The Company, on the other hand, has refused to sell its assets for a price which it alleges is grossly inadequate and unfair, and has indicated that it will not agree in a new lease to pay the rental which it is paying under the present leases. Thereupon the City suddenly instituted the present proceeding to enjoin the payment of a 30 cents dividend, alleging that the Company's capital is impaired by at least $44,000,-000. Everyone must immediately wonder why the City, which for years has been thoroughly familiar with the Company's affairs, has suddenly found the Company to be greatly insolvent and why the City would wish to

continue to lease its facilities to an insolvent Company. These facts naturally raise serious doubts as to the bona fides and the merits of the City's present suit, but they can be overcome by clear convincing evidence of capital impairment, which the City was entitled to produce under the ruling of the Chancellor.

In the light of the averments in plaintiffs' complaint and the effort of the City to prove that there was a large capital impairment and no net profits or earned surplus out of which to pay dividends, this Court certainly could not say, as appellants ask us to do, that the Court below did not have reasonable grounds for issuing a preliminary injunction—*unless plaintiffs had no standing or status to file the present complaint.*

CITY'S RIGHTS AND STATUS UNDER ITS OPTION

It is important to note that this is *not* a stockholders' suit, or an action arising out of a partnership or joint ownership, or a suit by the Commonwealth, or by a receiver, or by a trustee in bankruptcy. This Court has expressly and specifically decided that the City and the Company *are not and cannot* become partners, and that the City is not liable for any of the debts, obligations or liabilities of the Company, *nor is it entitled to become a joint owner or a stockholder of the Company* : *Brode v. Philadelphia,* 230 Pa. 434, 453, 79 A. 659.

Appellees correctly state that "Plaintiff-City and Defendant-Company occupy a unique relationship to each other ;" and that the City has a substantial interest in the Company's financial affairs. Although the City is granted many important and very unusual rights under the 1907 Agreement, it is strikingly noteworthy that *it is given no rights with respect to the payment, omission or veto of a dividend.* The City's only right (under the Agreement) with respect to dividends is a

right to share dividends after common stockholders have received in any year dividends of $3.00 per share. The 1907 Agreement specifically and in detail sets forth the rights and obligations of the City and the Company; if the parties had intended to give the City a veto power over dividend action or the right to enjoin dividend payments, would it not have been specifically provided for in the Agreement? The omission of such right, in view of the detailed provisions for numerous other rights given to the City, is persuasive evidence that the parties never gave, or intended to give the City such a right.

What then are the City's rights under its option? In order to determine whether the City has any legal standing and equity under its option of purchase—which it has never exercised—it is necessary, of course, to analyze the option. The option is set forth in paragraph Eleventh of the 1907 Agreement and reads as follows:

"The City reserves the right to purchase all the property, leaseholds and franchises of the Company and its wholly-owned subsidiaries upon any first day of July hereafter, by serving six months' notice on the Company of its intention so to do and *upon paying* to the Company upon the date named in said notice, *an amount equal* to the sum of the face amount, or call price if any, and accrued interest of all then outstanding bonds of, and all then outstanding prior lien bonds, mortgages and ground rents on the property of, Company and its wholly-owned subsidiaries, plus the par value of all then outstanding preferred stock of Company, *and an amount equal to ten (10) dollars per share* for all then oustanding common stock of Company, *and the amount of the then undistributed corporate surplus,* if any, of Company."

An Optionee of an Unexercised Option Which
Avers Facts Showing the Option is Worth-
less, Has Neither Legal Standing Nor
Equity to Restrain the Payment of
a Dividend by the Property
Owner

Prior to any exercise of the option by the City, *the
optionee has no interest, legal or equitable,* in or to the
property subject to the option: *Helvering v. San Joa-
quin Fruit & Investment Co.,* 297 U.S. 496, 498 (1936) ;
*Gay v. Burgess,* 74 Atl. Rep. 714, 30 R.I. 231; *Brooks
v. Yawkey,* 200 Fed. (2d) 663, 665 (1953) ; *Phenix In-
surance Co. v. Kerr,* 129 Fed. 723, 727 (8th Circuit,
1904) ; American Law of Property, §11.17; *Kadish v.
Lyon,* 229 Ill. 35, 40; 82 N.E. 194; *Bras v. Sheffield,*
49 Kan. 702, 710; 31 Pac. 306; *Caldwell v. Frazier,* 65
Kan. 24; 68 Pac. 1076; *Luigart v. Lexington Turf Club,*
130 Ky. 473, 480; 113 S.W. 814; *Trumball v. Bombard,*
171 App. Div. 700; 157 N.Y.S. 794; *Gamble v. Garlock,*
116 Minn. 59.

In the *San Joaquin* case, 297 U.S., supra—which in-
volved a determination of (gain or loss resulting in)
taxable income and this in turn depended upon *an op-
tion to purchase* which was contained in a lease—Jus-
tice ROBERTS said (p. 498) : "But the option is ad-
mittedly not the same property as the land. So con-
ceding, the respondent still insists that ownership of
the option created an interest in the land. This would
not be true of a bare option unconnected with a lease;
but we are told that because embodied in the lease, the
agreement became a covenant real and gave the lessee
a species of interest or property in the land. The
weight of authority is to the contrary, . . . ."

In *Gay v. Burgess,* 74 Atl. Rep., supra, the Court
held that a holder of corporate bonds, with an option

to exchange the bonds for stock, has no interest in the stock and cannot restrain the Company from declaring a dividend or issuing new shares of stock. The Court said (p. 718) : "It [the option] is simply an option to take stock as the stock may turn out to be when the time for choice arrives. The bondholder does not become a stockholder by his contract in equity any more than at law. Pratt v. American Bell Telephone Co., 141 Mass. 225, 5 N.E. 307."

In *Brooks v. Yawkey*, U. S. Court of Appeals, 200 Fed. 2d, supra, plaintiff sued for damages for breach of his option to purchase 200 acres of land. Defendant had sold 85 acres prior to the exercise of the option. The Court held that the unexercised option gave no right to damages and said: "But different considerations are involved in the case of an option to purchase real property unexercised at the time of expropriation. The reason for this is that an option is merely a contract whereby an owner binds himself to enter into a contract of purchase and sale with another at a specified price and within a given period of time in the future if the other chooses to do so. Thus it is held in New York, and generally elsewhere, that such an agreement alone does not give the optionee any interest in the real property covered by the option. Matter of City of New York (Upper New York Bay), 1927, 246 N. Y. 1, 157 N.E. 911."

In *Phenix Insurance Co. v. Kerr*, 129 F., supra, the owner of a building destroyed by fire was held to be entitled to the insurance as against an optionee who had not exercised his option. The Court said (p. 727) : ". . . while the owner of the option may accept it, and compel the owner of the property to comply with its terms, *until the owner of the option does so he has no interest in the property.* He has nothing but a mere

right to acquire an interest, and this is neither the ownership nor any interest in the property which impinges upon its unconditional ownership by him who gave the option. Richardson v. Hardwick, 106 U.S. 252, 254, 1 Sup. Ct. 213, 27 L. Ed. 145; Gustin v. Union School District (Mich.), 54 N.W. 156, 34 Am. St. Rep. 361."

It is, I believe, clear that the *City's unexercised option of purchase* gives the City no interest in the Company's properties and no status whatsoever to maintain the present action.

Entirely apart from the question of the legal standing of plaintiffs, there is no value or equity in the option to justify an injunction. The payment of a dividend, if made from the net profits or earned surplus of the Company, could not possibly affect or injure the City's interest under the aforesaid option since (as the majority admit) the price which the City would pay under its option would be reduced by the exact amount of the dividends which were paid. Furthermore, even if the allegations of the City's complaint are true and even if the proposed dividend is illegally paid out of capital, the City's option is still valueless and cannot possibly justify the equitable relief herein sought. The City alleges that the outstanding liabilities of the Company exceed $68,000,000. and that its assets are not worth more than $50,000,000. In order to acquire, under its option, $50,000,000. of assets, the City would have to pay $68,000,000. of liabilities and at least $10. a share on the common stock or $17,268,000.,—a total of $85,268,000. In other words, in order to exercise its option which it is allegedly seeking in this proceeding to protect, the City would have to pay a minimum of $85,000,000. for assets which it alleges are worth not more than $50,000,000. In view of the serious, if not

irreparable, harm which an injunction would impose upon the Company,* it would seem most inequitable and unjustifiable to grant an injunction—even if the City had a legal status to seek one—*solely to preserve an unexercised option which the City's allegations demonstrate is worthless.*

THE CITY'S STATUS AS A POSSIBLE GENERAL CREDITOR

The City's next contention is that it has a legal standing to enjoin payment of the proposed dividend because it alleges it has a status as a general creditor. The City is not a judgment creditor; it is not a lien creditor; it is not a present creditor; it merely hopes, apparently, to become a general creditor in the future. The City does not even aver that the Company has not in the past and is not now meeting all of its current liabilities, *or that it is unable to pay claims which may be justly made against it in the future.* Such a possible future creditor has absolutely no standing to bring this suit to enjoin the payment of a corporate dividend. Even if the payment of the proposed dividend were illegal—there is no question of actual fraud, but only of legal fraud—the City, under the facts set forth in its present bill and amended bill of complaint, would not thereby become a creditor within general principles of law, or within the purview of the Uniform Fraudulent Conveyance Act of May 21, 1921, P. L. 1045, so as to entitle it to restrain the payment of the proposed dividend.

---

* The present injunction (a) will retard, if not block, the large-scale modernization program upon which the Company is presently engaged and which the City has been vigorously demanding, and (b) it will have an adverse effect upon the Company's credit, and (c) it will of course affect the rights of the stockholders—many of whom are needy employes of the Company—to a present small dividend, and will substantially impair, at least for the time being, the market value of their stock.

CITY'S RIGHTS AS LESSOR

The City further contends that it is entitled to maintain this suit because the Company, although it has promptly paid the rent, has not adequately maintained three facilities which it leased from the City, viz., the Frankford Elevated, the Bustleton Surface Line and the Broad Street Subway. Even if this averment could be proved, it would not give this lessor any legal standing to enjoin the proposed dividend. *It is a novel, dangerous and unsound doctrine that a lessor can enjoin the payment of a corporate dividend,* especially when there has been no default in the payment of rent, and (we repeat) the City does not even aver that the Company has failed to pay its past or current liabilities, or that it is unable to pay claims which may be justly made against it in the future.

CITY IS ADEQUATELY AND AMPLY PROTECTED
IN ALL ITS RIGHTS

The City of Philadelphia has many adequate remedies to enforce and protect each and every right it possesses under the 1907 Agreement and under the leases. If the City believes that the 1907 Agreement and the leases or both have been breached, it may maintain a proper action or actions (1) for the performance of any and every right it has under the Agreement and under the leases, or (2) for damages for breach of any and every right it has under the Agreement or the leases. The majority, overlooking these full and adequate remedies, cite the case of *Pennsylvania State Chamber of Commerce v. Torquato,* 386 Pa. 306, 125 A. 2d 755, as justifying the issuance of a preliminary injunction to save the City from irreparable damage. On the twin questions of legal standing and irreparable damage, the two cases are clearly distinguishable. In the *Torquato* (usually called the Westinghouse) case, the Unemploy-

ment Compensation Fund was created by large contributions made by plaintiffs as a result of which they had a *vested or property interest* therein. Moreover, approximately $9,000,000. of unemployment compensation could have been illegally paid to employes which, absent the injunction, could never be recovered, and the vested rights of the plaintiffs would have been irreparably impaired. In the present case (1) the City does not own the franchises, property and assets of the defendant corporation; (2) the City *has no vested property right*—under the option Agreement or under its possible future creditor theory, or under its lease,—*which will be impaired* by the payment of the proposed dividend; (3) the Company has not failed to pay its past or its current liabilities, and there is no averment that it will be unable to pay claims which may be justly made against it in the future. Still another important fact which radically separates and distinguishes this case from the *Westinghouse* case is that the amount of any dividend which is illegally and negligently paid may be recovered from the directors: *Cochran v. Shetler,* 286 Pa. 226, 133 A. 232; *Pa. Knitting Mills v. Bayard,* 287 Pa. 216, 134 A. 397; *Branch, Trustee v. Kaiser et al.,* 291 Pa. 543, 140 A. 498; *Cornell v. Seddinger,* 237 Pa. 389, 85 A. 446; *West v. Hotel Pennsylvania,* 148 Pa. Superior Ct. 373, 25 A. 2d 593. Cf. also *Berks Broadcasting Co. v. Craumer,* 356 Pa. 620, 52 A. 2d 571; and there is no averment that the directors are financially unable to repay such a dividend. The *Westinghouse* or *Torquato* case is so different from the instant case, factually, equitably and legally, that it cannot possibly support the majority opinion.

Furthermore, the City, we once again repeat, has many and adequate remedies to protect every right it possesses under the 1907 Agreement and under the leases; consequently the payment of the proposed divi-

dend, whether legally or illegally made, cannot, on analysis, impose irreparable harm on the City. For example, we note that the City under the 1907 Agreement is specifically given not only an option of purchase, but also the right and power *to acquire all the assets* of the Company (its property, leaseholds and franchises) by condemnation proceedings, in which event the City would pay for them *only their fair value.* Moreover, if the City believes that the Company, which is promptly paying its rent, is not adequately maintaining the three facilities leased to it, there are adequate remedies for the enforcement of the covenants of the lease, as well as for any breach or breaches thereof, including a proceeding before the Public Utility Commission. See *Duquesne Light Co. v. Upper St. Clair Township,* 377 Pa. 323, 105 A. 2d 287; *York Telephone and Telegraph Co. v. Pennsylvania Public Utility Commission,* 181 Pa. Superior Ct. 11, 121 A. 2d 605.

For the foregoing reasons it is clear *that the City has no legal standing or status to bring this present suit in equity to enjoin the payment of a dividend.* I would, therefore, reverse the order of the Court below, dissolve the injunction and dismiss the City's complaint.