**SEIBERLING RUBBER CO. v. UNITED STATES.**

**Civ. No. 24963.**

United States District Court
N. D. Ohio, E. D.
April 14, 1952.

Robert Guinther, Akron, Ohio, M. R. Schlesinger, Grossman, Schlesinger & Carter, Cleveland, Ohio, for plaintiff.

Don C. Miller, Dist. Atty., Cleveland, Ohio, for defendant.

JONES, Chief Judge.

The basis of this suit is the recovery or refund of undistributed profits tax paid by the plaintiff on account of its fiscal year ending October 31, 1938.

The 1936 Act, Revenue Act 1936, § 14, 26 U.S.C.A.Int.Rev.Acts, page 823, imposed a surtax on current year undistributed net income even where a corporation had an accumulated deficit, and the corporation was prohibited by state law from paying a dividend. The right of recovery is dependent upon whether the taxpayer has brought itself within the remedial provisions of the 1942 amendment, Revenue Act 1942, § 501, 26 U.S.C.A.Int.Rev.Acts, page 344 giving the deficit corporation such right.

There are no controverted issues except those arising from the denial by the defendant's answer of plaintiff's allegations, sub-paragraphs (d) and (g) of paragraph 2 of the complaint.

The matter was tried and submitted upon stipulations, oral and exhibit evidence, and was argued orally by counsel for the parties. It is not thought necessary to review the evidence, but it will be sufficient to set down the reasons for the decision reached.

If the liberal purposes of the 1942 amendment are to be available to the taxpayers, for whom it was intended, effect must be given to the true status of this taxpayer when it paid the tax under the so-called undistributed profits tax law of 1936. Was the plaintiff taxpayer (1) a deficit corporation at the beginning of the tax year 1937 within the meaning of the law of the State of its incorporation (Delaware), and (2) prohibited by law from paying dividends during the existence of the deficit? United States v. Ogilvie Hardware Co., 330 U.S. 709, 67 S.Ct. 997, 91 L.Ed. 1192; George E. Warren Co. v. United States, D.C., 76 F. Supp. 587.

■ While it is true that the financial statements of the plaintiff did not reflect that status in the asset value stated therein on the critical date, except the statement in form 10–K, plaintiff's exhibit 3, to the Securities Exchange Commission, nevertheless, I think plaintiff entitled to show and establish the actual facts respecting the asset value of the receivable from the wholly owned subsidiary, and the value of associated companies on the basis of their net worth; and, as well, is entitled to offer proof to demonstrate that the taxpayer's financial liabilities and condition at the critical time were such that it could not legally declare and pay dividends.

Was the plaintiff a deficit corporation at the beginning of the tax year 1937, and did it continue in this condition throughout the year?

The parties have stipulated certain starting surplus figures. (Stipulation, paragraph 7.) The Government contends that the reserves which the taxpayer had created to cover losses in its investment in the associated companies should be added to this surplus figure. It also contends that the surplus figure should not be reduced by what taxpayer claims to be the actual losses in its advances to its wholly owned subsidiary.

I think that the Government's position is not supported by the evidence.

An examination of the balance sheets of the associated companies, in evidence, reveals that the value of the taxpayer's investment in those companies had greatly diminished by November 1, 1937. The loss which the taxpayer had suffered,—computed by multiplying the net worth of the companies at the critical time by the percentage of shares owned by it, and subtracting this figure from the original cost of the shares,—approximated the reserve which the taxpayer had created to cover the loss. Thus the reserve properly was not a part of the surplus.

The account with the subsidiary raises a more difficult problem.

It seems to be a fact that the receivable had a considerably lessened value from the amount carried on the books. Of course, the value of the receivable as an asset, conceivably would vary from year to year as payment from profits from that subsidiary might permit reduction of the debt, but at the critical time it had only the actual value that plaintiff contends for it. This is somewhat supported by the fact that in 1939 the directors resolved that the receivable was worthless and wrote it off as an asset. It is also supported by the fact that the subsidiary was a deficit corporation by over two million dollars during the tax year in question.

■ Whether the taxpayer was prohibited from paying dividends during the tax year in question when it had a deficit in accumulated earnings is to be determined by the law of the state of its incorporation, in this case, the law of Delaware.

Section 34 of the Delaware Corporation Law, Rev.Code 1935, § 2066, in effect during the critical time, permitted the payment of dividends out of surplus, or net profits for the fiscal year then current or the preceding fiscal year. However, it incorporated by reference any restrictions upon the power of the directors to declare dividends in the certificate of incorporation. Jones v. First National Building Corp., 10 Cir., 1946, 155 F.2d 815.

The taxpayer's charter permitted the payment of dividends on the preferred stock out of "net earnings". Joint Exhibit 1–A. Its by-laws, part of its charter, permitted the payment of dividends upon the capital stock of the corporation "when earned". See Stipulation, paragraph 12. These provisions, as I view them, restricted the statutory authority for the payment of dividends. Interpreted in the light of the accepted meaning of the term "earnings", they prohibited the payment of dividends when there was a deficit in "accumulated earnings".

The evidence clearly shows that the taxpayer had a deficit in accumulated earnings during the fiscal year beginning November 1, 1937. It must be con-

cluded, therefore, that it was prohibited by Delaware law and its corporate charter from paying dividends during this period.

 It is my opinion that the settlement of the taxpayer's income tax liability made in respect of the year 1939, is not a bar to the claims asserted by the plaintiff under favor of the amendment of 1942, and I do not think that a realized loss for income tax purposes is the same as a business loss, or deficit, within the purview of the amendment of 1942, and which the directors are required to take into account when the consideration of dividends is before them. United States v. Ogilvie Hardware Co., supra. Nor do I think that a reduction in par value of the taxpayer's stock in 1933, thereby created a surplus out of which dividends could have been paid, when one considers what the true financial condition of the taxpayer actually was.

 It seems to me that the taxpayer can not be held in a strait-jacket of accounting on the basis of income tax return terminology, but that it should be permitted to demonstrate that the asset value of its interest in wholly owned and affiliated companies must be considerably reduced or diminished in order truthfully to reflect what the actual financial condition of the taxpayer was.

The reduced or diminished value of those assets on the basis of the stipulated surplus, paragraph 7, certainly establishes the fact that the taxpayer had no surplus or earnings out of which dividends could have been legally declared or paid.

What, it seems to me, is the real basis upon which a taxpayer, "trapped" by the 1936 law, may be extricated under the amendment of 1942, is dependent on the true facts respecting his financial

condition as determined by simple and realistic tests as distinguished from technical federal tax and regulation usage. The 1942 amendment was not an exemption measure,—it was a congressional acknowledgment of the punitive character of the 1936 provision, and afforded an opportunity of securing relief from the unjust consequences of the law,—if ever legislation dealing with taxes can be thought to have such considerate implications.

It is in evidence that the plaintiff was in straitened financial condition in 1937 and 1938. It was liable for the debts of its wholly owned and affiliated or associated companies, its debentures were in default; the banks had representatives on its Board of Directors; it was in the hands of the banks, according to the testimony of J. P. Seiberling, its president.

On the basis of the evidence before me I am satisfied that the taxpayer's financial condition at the beginning of the taxable year in question was such that no dividends legally could have been paid.

I find the plaintiff taxpayer was a deficit corporation under Delaware law as of the close of the preceding taxable year, or on October 31, 1937, and that as such it was prohibited from paying dividends during the existence of such deficit by Delaware statute and by provisions of its certificate of incorporation incorporated by law in the Delaware statute. Jones v. First National Building Corporation, supra.

My conclusion is that the plaintiff is entitled to the refund and judgment should be entered therefor, as prayed.

This memorandum will be considered compliance with Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A.