**HAMILTON MFG. CO.**
v.
**UNITED STATES.**
No. 11071.

United States Court of Appeals
Seventh Circuit.
July 16, 1954.

---

7. Footnote 1, supra. Finding of Fact 29(h).

Frederic Sammond, Milwaukee, Wis., Joseph R. Barnett, Harry L. Wallace, Fairchild, Foley & Sammond, Milwaukee, Wis., of counsel, for appellant.

Timothy T. Cronin, U. S. Atty., Milwaukee, Wis., H. Brian Holland, Asst. Atty. Gen., Maurice P. Wolk, Asst. Atty. Gen., Washington, D. C., Ellis N. Slack, Sp. Asst. to Atty Gen., for appellee.

Before MAJOR, Chief Judge, and LINDLEY and SCHNACKENBERG, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff, a Wisconsin corporation, brought suit in the District Court to recover undistributed profits tax assessed and paid for the year 1936 under the Revenue Act of that year, 26 U.S.C. § 14, which imposed a surtax on retained corporate net income earned but not dis-

tributed to the stockholders. The statute was amended in 1942 in order to provide retroactive relief for taxpayers who had been taxed, even though prohibited by state law from paying dividends. 26 U.S.C. § 501(a). Plaintiff averred that it had a deficit in its earnings account, *i. e.*, its earned surplus, at the beginning of 1936 of $106,134.89; that its net profits for the year were $121,515.96; that the remainder of $15,381.07, after deducting from the earnings the existing deficit, was the only amount legally subject to tax as undistributed profits, instead of the entire amount of net earnings for the year of $121,515.96, as the commissioner had held, and on which it had paid the protested tax. It sought to recover the alleged over-payment of $23,-672.61.

The complaint and the exhibits thereto disclose that at the time plaintiff had a capital surplus of $685,652.89 which had arisen, not from increase in value of capital investments, or from any other added increment to capital assets, but as a result of conversion of preferred stock into new preferred and common stocks.

At a pretrial conference the parties stipulated that before other issues were set for trial, the court should determine whether the taxpayer was prohibited by Wisconsin state law from paying a dividend in 1936, for if it was, then, under the amended Revenue Act, the tax of which complaint was made could not rightfully have been assessed or collected. In its resolution of this issue, the court held that the Wisconsin law did not forbid the payment of dividends in 1936 and dismissed the complaint. 116 F.Supp. 524. On appeal plaintiff contends that this was error.

The Amendatory Act excluded the tax: "(3) * * * In the case of a corporation having a deficit in accumulated earnings and profits as of the close of the preceding taxable year, the amount of such deficit, if the corporation is prohibited by a provision of a law or of an order of a public regulatory body from paying dividends during the existence of a deficit in accumulated earnings and

profits, and if such provision was in effect prior to May 1, 1936." Revenue Act 1942, § 501(a)(3), 26 U.S.C.A.Int. Rev.Acts, page 344. As the Supreme Court announced, in United States v. Ogilvie Hardware Co., 330 U.S. 709, 67 S.Ct. 997, 91 L.Ed. 1192, and as observed by the District Court, the statute was intended to provide relief to corporations which had paid taxes under duress of conflicting state and federal compulsions. In Seiberling Rubber Co. v. U. S., D.C., 115 F.Supp. 798, 801, affirmed 6 Cir., 207 F.2d 585, the court added the additional thought that " * * * The 1942 amendment was not an exemption measure,—it was a congressional acknowledgment of the punitive character of the 1936 provision, and afforded an opportunity of securing relief from the unjust consequences of the law * * *." Consequently the crucial question confronting us is whether the trial court correctly ruled that plaintiff, under the Wisconsin law, was not "prohibited by a provision of a law" from paying dividends in 1936 under the circumstances alleged to be then existing.

The pertinent Wisconsin statute, following a provision in Section 182.08 for stockholders' liability in case of derogation of creditors' rights, in Section 182.19, provides that: "(1) No dividend shall be paid by any corporation until at least fifty per cent of the authorized capital stock has been fully paid in, and then only out of new profits properly applicable thereto, and which shall not in any way impair or diminish the capital * * *. (2) But any corporation which has invested net earnings or income in permanent additions to its property, or whose property shall have increased in value, may declare a dividend either in money or in stock to the extent of the net earnings or income so invested or of the said increase in the value of its property * * *." The parties disagree sharply as to the correct meaning of the words "net profits," plaintiff insisting that a deficit in earned surplus, resulting from deficiencies or losses in corporate operations over a protracted

period, is the opposite of net profits, and that until current earnings increase sufficiently to extinguish the losses, *i. e.*, the deficits, they may not properly be designated "net profits," while defendant asserts that the correct interpretation of the term is that dividends can be declared and paid from current earnings, despite the over-all deficit in earnings or profits.

■ We are of the opinion that, under the circumstances which plaintiff avers existed here, the Wisconsin statute did not authorize dividends out of plaintiff's current earnings in view of the fact that at that time there had been no earnings but only losses resulting in a deficit, which inevitably impaired the corporate capital. Wisconsin treats capital investment as a trust fund, primarily to protect creditors. Goetz v. Williams, 206 Wis. 561, 240 N.W. 181. Obviously operating losses necessarily reduce or impair this trust fund. The logical result, it seems to us, is that subsequent current earnings may not be turned over to the stockholders by way of dividends before restoring the trust fund. Such conclusion, we think, is the only one consistent with the general intent of the Wisconsin theory of a capital trust fund.

Furthermore the import of the language of the specific statute in question is to the same effect. It forbids dividends from anything other than "net profits." This can mean only a surplus over expenses incurred and paid in producing earnings. Here, at the beginning of the year, instead of there having been such a surplus, there was a substantial deficit, an accumulated loss, which impaired and reduced the capital investment.

■■ We find no merit in the contention that the legislature of Wisconsin included in the words "net profits" only annual net earnings. We think it can be said reasonably only that by net profits is meant the net profits upon the business from its organization, and that the net profits are such as appear from the entire business of the company from its inception, and are not to be confined to

one period and made synonymous with annual profits. See Branch v. Kaiser, 291 Pa. 543, 140 A. 498; Wittenberg v. Federal Mining & Smelting Co., 15 Del. Ch. 147, 133 A. 48. We approve the language of Lich v. United States Rubber Co., D.C., 39 F.Supp. 675, 681, as follows: "What are 'net profits' within the meaning of the statute? The statute is devoid of any definitive answer. The term, however, is one of common usage and the ordinary acceptation must be adopted. The term connotes the clear pecuniary gain remaining after deducting from the gross earnings of the business the expenses incurred in its conduct, the losses sustained in its prosecution, and the capital invested. (Citing cases.) It is a prerequisite to the existence of net profits that the assets of a corporation exceed the liabilities, including the liability on the capital stock. Where the capital is impaired, annual net earnings, if insufficient to offset the impairment, do not constitute net profits. * * * The term net profits is not synonymous with the term annual net earnings. Annual net earnings may be productive of net profits, or, as in the instant case, reductive of the deficit." As the Supreme Court said in Willcuts v. Milton Dairy Co., 275 U.S. 215, 217, 48 S.Ct. 71, 72 L.Ed. 247; " 'There can of course be no earned surplus or undivided profits until any deficit or impairment of paid-in capital due to depletion, depreciation, expense, losses or any other cause has been made good.' " See also in this connection, U. S. v. Seiberling Rubber Co., 6 Cir., 207 F.2d 585; U. S. v. Byron Sash & Door Co., 6 Cir., 150 F.2d 44.

■ In view of Wisconsin's established theory of a trust fund, and its express limitation of dividends to "net profits", plaintiff was in no position to declare dividends. In the preceding years there were no net profits but only accumulated losses, to the reduction of which current earnings must necessarily be applied until the deficit is wiped out and net profits have actually come into existence. There was here no fund within the meaning of the words "net

profits"; to have paid dividends would have been in violation of the statute.

The trial judge was of the opinion that an existing capital surplus might have been converted into reduction of the deficit in earned surplus, so that current earnings could be distributed as dividends. He did not expressly hold that that capital surplus provided a source for payment of dividends, but thought that by corporate act plaintiff could have used it to extinguish the earnings deficit. We think it obvious that under the averments of this complaint, the capital surplus was not available for any such purpose. It did not represent enhanced value of corporate assets but was a bookkeeping item, resulting from a change in corporate form,—conversion and reduction of stock. To have made use of it to reduce the deficit in earnings would have resulted in no betterment of corporate finance but would merely have converted the deficiency in earnings to a reduction of the capital account. In neither situation could money be distributed to the stockholders as dividends payable from "net profits."

The Wisconsin statute and its court decisions support this reasoning. The Act itself provides for payment of dividends only from net profits; it grants no privilege to declare dividends payable out of capital assets except in case of enhancement in value of the latter. Thus, in Hull v. Pfister & Vogel Leather Co., 235 Wis. 653, 664, 294 N.W. 18, 22, the court approved the language from 13 Am.Juris, p. 317, Sec. 198: " 'In the determination of who is entitled to the funds resulting from a reduction of stock, it must be borne in mind that such funds represent capital and not profits. * * * the surplus capital which remains upon a reduction of capital stock * * * cannot be used to satisfy the claims of preferred stockholders to arrears of cumulative dividends; but * * * must be distributed ratably among the common and preferred stockholders in the ratio in which their respective holdings have been reduced.' " Defendant seeks to avoid the effect of this decision on the ground that the court was there dealing with a corporate liquidation dividend. To our way of thinking the reasoning is applicable to the situation before us.

It is argued that plaintiff's board of directors could, by resolution, have transferred the earnings deficit to the capital surplus thus decreasing the latter by the amount of the deficiency charged against it. Perhaps so, but such action, as we have noted, would have created no "net profits" essential to a valid dividend under the statute. Nor would it have been consistent with the Wisconsin conception that capital assets are a trust fund. To the extent that such assets are depleted, the trust fund is endangered by payments made to stockholders out of the capital account. Such is not sound finance and such is not the intent of the legislature and the courts of Wisconsin. Should the corporation have attempted to divert unenhanced capital assets to dividends to stockholders, it would have acted directly in the face of the statute providing for payment of dividends only from "net profits."

We have accepted as true, as we must, the averments of the complaint and, doing so, we conclude that, upon those averments, including the exhibits to the complaint, the court erred in dismissing the complaint. Whether upon trial, those averments can be proved is another matter. The judgment is reversed and the cause remanded to the District Court for further proceedings not inconsistent with this opinion.